UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

JANICE FOSS,

                      Plaintiff

               -against-

COCA COLA ENTERPRISES INC., Defendant GENE
TALLMAN, in his individual and official capacity, BRIAN
WYNNE, in his individual and official capacity, SEENA
CUSHMAN, in her individual and official capacity,
MICHAEL VAN AKEN, in his individual and official capacity
and  SUSAN GARRETT in her individual and official capacity,

                   Defendants.
------------------------------------------------------------------------ X

**DOCKET NO.:CV-07-1322**
**(JS)(WDW)**

**THIRD**
**AMENDED COMPLAINT**

*JURY TRIAL DEMANDED*

       Plaintiff JANICE FOSS by and through her attorneys, the LAW OFFICES OF FREDERICK K.

BREWINGTON, as and for her Third Amended Complaint by leave of Court against the Defendants,

states and alleges as follows:

## PRELIMINARY STATEMENT

       1.      Prior hereto, Plaintiff filed a Complaint on April 3, 2007. Thereafter, Plaintiff amended

said Complaint, as of right, on May 16, 2007. There was a Second Amended Complaint which was

done, pursuant to Memorandum and Order of this Court, dated January 4, 2008. The instant Third

Amended Complaint is submitted pursuant to a So Ordered Stipulation of this Court dated March 6,

2008. This is a civil action seeking monetary relief (including past and on going economic loss),

injunctive relief, declaratory judgment, compensatory and punitive damages, disbursements, costs and

fees for violations of the Plaintiff's rights, brought pursuant to Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e et seq. (as amended), Age Discrimination in Employment Act of 1967, 29 U.S.C. §

621 et seq. (as amended), 42 U.S.C. §1981,  and New York State's Human Rights Law, Executive Law

§ 296.

2.      Specifically, the Plaintiff alleges that the collective Defendants negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of her employment, position, title and pay through misrepresentation, misinformation, harassment and character assassination.

3.      Said acts were done knowingly with the consent and condonation of COCA COLA ENTERPRISES INC., GENE TALLMAN, in his individual and official capacity,  BRIAN WYNNE, in his individual and official capacity, SEENA CUSHMAN, in her individual and official capacity, MICHAEL VAN AKEN in his individual and official capacity, and SUSAN GARRETT in her individual and official capacity, with the express purpose of removing and silencing the Plaintiff, and generally violating her rights as protected by the United States and New York State Constitutions, and federal and state statutes, rules and regulations.

### JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked under 28 U.S.C. §§1331 and 1343.

5.      This Court is requested to exercise pendant jurisdiction with respect to Plaintiff's State law claims pursuant to 28 U.S.C.§ 1367.

6.      Venue in the Eastern District of New York is proper under 28 U.S.C. §1391, based on the fact that Plaintiff's residence and the Defendant is a foreign Corporation conducting business in the State of New York, within the various counties of New York, including but not limited to Nassau and Suffolk.

7.      Prior hereto, on July 19, 2005 Plaintiff filed Charge of Discrimination 10106821 against Defendants COCA-COLA ENTERPRISES, INC., with the New York State Division of Human Rights (hereinafter "NYSDHR") alleging her wrongful termination due to the Defendants' racial animus.

Plaintiff also cross filed a charge with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"), under EEOC Charge No. 16GA504303.

8.     On or about December 22, 2006, the New York State Division of Human Rights issued a finding of PROBABLE CAUSE supporting Ms. Foss' allegations that the Defendants, COCA-COLA ENTERPRISES, INC., engaged in unlawful discriminatory practices.

9.     On or about December 28, 2006, Plaintiff received a Dismissal for Administrative Convenience of her complaint.

10.     On February 8, 2007, Plaintiff received a Notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 16GA504303 (copy annexed hereto Exhibit A). As of the filing date of the original Complaint, ninety days from the date of receipt of the Notice of Right to Sue had not yet passed. As per the EEOC Dismissal and Notice of Rights, Plaintiff has the right to sue under Title VII, the American with Disabilities Act, and/or the Age Discrimination in Employment Act.

## PARTIES

11.     Plaintiff, JANICE FOSS, at all times relevant in this Complaint, is a forty-four (44) year old African-American female, and a citizen of the United States of America. Plaintiff resides in the County of Nassau, State of New York.

12.     Defendant COCA-COLA ENTERPRISES INC., (hereinafter "COCA-COLA") at all times relevant in this Third Amended Complaint, is upon information and belief, a foreign corporation conducting business in the various counties of the State of New York, including, but not limited to Nassau and Suffolk County.

13.     During all times mentioned in this Third Amended Complaint, Defendant GENE TALLMAN, a White man, (hereinafter "TALLMAN") sued herein in his individual and official

3

capacity, is an employee of the Defendant COCA COLA, and at all relevant times, was the Director of the Cold Drinks Division and had the authority to effect Plaintiff's employment and cause and/or bring about her termination.

14.    During all times relevant in this Third Amended Complaint, Defendant BRIAN WYNNE, a White man, (hereinafter "WYNNE") sued herein in his individual and official capacity, is an employee of the Defendant COCA-COLA, and at all relevant times, is the Vice President of Human Resources, North America and had the authority to effect Plaintiff's employment and cause and/or bring about her termination.

15.    During all times relevant in this Third Amended Complaint, Defendant SEENA CUSHMAN, a White female, (hereinafter "CUSHMAN") sued here in her individual and official capacity, is an employee of Defendant COCA-COLA, and at all relevant times, is the Vice President of Human Resources, North East, Business Unit and had the authority to effect Plaintiff's employment and cause and/or bring about her termination.

16.    During all times relevant in this Third Amended Complaint, Defendant MICHAEL VAN AKEN, White male, (hereinafter "VAN AKEN") sued here in his individual and official capacity, is an employee of Defendant COCA-COLA, and at all relevant times, was the Director of Human Resources and had the authority to effect Plaintiff's employment and cause and/or bring about her termination.

17.    During all times relevant in this Third Amended Complaint, Defendant SUSAN GARRETT, White female, (hereinafter "GARRETT") sued here in her individual and official capacity, is an employee of Defendant COCA-COLA, and at all relevant times, was Human Resources Manager, Talent Acquisition, North East Business Unit and had the authority to effect Plaintiff's employment and cause and/or bring about her termination.

4

## FACTUAL ALLEGATIONS

18.     Plaintiff is a 44 year old African American woman having been born on January 17, 1961.

19.     On or about March 1998 Plaintiff was hired as a Cold Drink Channel Manager by Defendant COCA-COLA, working in its Westchester office.

20.     During her seven (7) years of employment, in or about March 2002, Plaintiff was promoted to Area Cold Drinks Sales Manager (hereinafter "ACDSM"), a Grade Level 102 position. While, Plaintiff was based out of Defendant COCA-COLA's Division office, she spent 95% of her time working with her assigned Sales Centers throughout New Jersey and Long Island.

21.     Upon information and belief, at the time of Plaintiff's termination on May 4, 2005, out of the 45 Grade Level 102 employees employed by Defendant COCA-COLA, only 4 individuals were of African American descent.

22.     At the time of Plaintiff's promotion, in March 2002, Plaintiff was one of three (3) ACDSM's aligned with three (3) Area Vice Presidents. The other ACDSM's were Jeff Long, a White male, and Bob Marceckiewycz, also a white male. The areas for which Plaintiff was responsible was Long Island, Brooklyn, Queens, and Staten Island; Jeff Long was responsible for Manhattan, Westchester, Rockland County, Orange County and Lower Connecticut; and Bob Marceckiewycz was responsible for New Jersey. Plaintiff's Area Vice President was Seena Cushman; Jeff Long's Area Vice President, Gerald Garavel; and Bob Marceckiewycz's Area Vice President, Jim Brennan.

23.     Shortly thereafter, the three Areas were consolidated into two. Plaintiff was assigned the areas of Long Island and New Jersey; and Jeff Long was assigned the areas of Brooklyn, Queens, Staten Island, Manhattan, Westchester, Rockland County, Orange County and Lower Connecticut.

24.     During this time, Plaintiff's supervisor was Brendan Walshe, a White male, Director of

5

Cold Drink.

25.    Throughout her tenure, Plaintiff performed her duties in an exemplary manner and received satisfactory reviews during her seven years employed with Defendant COCA-COLA, including corresponding salary increases and bonuses.

26.    In or about October 2004, Defendant TALLMAN was appointed to replace Mr. Walshe. As a result, Plaintiff, together with Jeff Long, Janice McCarthy and Leonard Erlanger, reported directly to Defendant TALLMAN. Collectively, they were Plaintiff's "Peer Level Team," of which Plaintiff is the only African-American. A "Peer Level Team" is a group of individuals all of who have the same Grade Level; in this case, all members of Plaintiff's Peer Level Team were Grade Level 102.

27.    On or about April 7, 2005, Plaintiff complained to Defendant TALLMAN about how she was treated and embarrassed by a white female co-worker, Janice McCarthy, during a presentation that Plaintiff was conducting on that date. Defendant TALLMAN responded that he would speak with Ms. McCarthy as he had "something similar" to discuss with her.

28.    Upon information and belief, Defendant TALLMAN requested that Ms. McCarthy submit a written account of the encounter with Plaintiff, while Plaintiff was not.

29.    On April 28, 2005, in response to Defendant TALLMAN's request that Ms. McCarthy submit a written account of the encounter with Plaintiff, Ms. McCarthy wrote a memorandum to Defendant TALLMAN on which Defendant GARRETT was carbon copied. The memorandum specifically states, "On April 13 in Maspeth, we met and discussed my concerns regarding our team environment and the impact it is having on my team and the business. I committed to share these concerns in writing to you."

30.    Defendant GARRETT, as a Human Resources Manager, had notice that Defendant TALLMAN provided Ms. McCarthy with an opportunity to express her concerns. Defendant

6

GARRETT and Defendant TALLMAN failed to grant Plaintiff FOSS the same opportunity afforded to Ms. McCarthy.  According to the Coca Cola Code of Conduct handbook, all employees are to be treated fairly.  As a Human Resources Manager, it is incumbent upon Defendant GARRETT to ensure equal treatment.

31.     Upon information and belief, during the week of April 26, 2005, while Plaintiff FOSS was away on vacation, Defendant GARRETT met with Defendant TALLMAN and Ms. McCarthy and Leonard Erlanger in Defendant TALLMAN's office where the topic of discussion was Plaintiff FOSS. Plaintiff FOSS was not aware of any meetings scheduled regarding her at that time.  Defendants conspired to terminate Plaintiff FOSS at said meeting.  In furtherance of the conspiracy, Defendants met and determined that Plaintiff would be terminated without affording an opportunity.

32.     Immediately thereafter, on or about May 3, 2005, Plaintiff was instructed to report to the office of Defendant TALLMAN, Director of the Cold Drinks Division,  on May 4, 2005 at 8:30 am. Plaintiff complied with the instruction.  Upon reporting to Defendant TALLMAN's  office for the meeting, Plaintiff noticed that Defendant GARRETT, Human Resources Manager for the Division, was present.  During that meeting Plaintiff was verbally informed that she was being terminated immediately. Defendant TALLMAN stated that Plaintiff was being terminated because she was difficult to work with.

33.     During the meeting on May 4, 2005, Defendant TALLMAN informed Plaintiff FOSS that she was not cooperating with his effort to build a team.  At no time did Defendant TALLMAN inform Plaintiff as to how she had failed to cooperate  with his efforts; Defendant TALLMAN simply stated that "this isn't working for you or for me."   Said reasons for Plaintiff's termination were pretextual.

34.     Upon information and belief, Defendant GARRETT prepared the severance agreement for Plaintiff FOSS which bears GARRETT's signature.  At no time prior to the preparation of the

7

severance agreement did Defendant GARRETT speak with Plaintiff regarding issues with her work performance.

35.     Upon information and belief, Defendant VAN AKEN also prepared the severance agreement for Plaintiff FOSS prior to her termination. Defendant VAN AKEN was clearly aware of the plans to terminate Plaintiff FOSS. As a labor and employee specialist, Defendant VAN AKEN was fully aware that Plaintiff was not being treated fairly and equally and was the subject of discriminatory conduct.

36.     Coca Cola's Management Essentials Supervisory Guide informs all managers of their duty to conduct 'disciplinary interviews' where the following categories are to be discussed: "describe unsatisfactory performance"; "ask for ideas, agree on solutions, set goals,"; "close meeting, document action"; "ask for progressive discipline notice form". In addition, the Guide sets forth procedures for implementing terminations, including ensuring that the reasons for the discharge are in fact legitimate and defensible, that the action is consistent with the treatment of other employees, that all necessary steps have been followed and that alternatives to discharge have been explored. None of the above mentioned guidelines or procedures were followed in the case of Plaintiff FOSS.

37.     Further, Defendant TALLMAN has falsely alleged that during a "skip level" meeting conducted by him on April 4, 2005, he had received "complaints" from Plaintiff's co-workers that she was difficult to work with. Defendant TALLMAN never specified *which* co-workers allegedly complained about Plaintiff, stating that she was difficult to work with; he simply stated that the "team" complained that Plaintiff was difficult to work with.

38.     Upon information and belief, the individuals in attendance at the "skip level" meeting were Thomas McBrady, Yvette Mingo, Jim Yasko, and Matt Merson. Mr. McBrady and Mr. Yasko all had positive working experiences with Plaintiff. In fact, Ms. Mingo and Plaintiff had a pre-existing

8

relationship and worked well with each other on several projects, including the high profile renewal efforts with Rutgers University. Mr. Merson was new to the company and had limited experiences with all team members.

39.     Although Defendant TALLMAN claimed that Plaintiff failed to cooperate with his team building efforts, when Defendant TALLMAN requested that Plaintiff put aside her own duties for a six week period of time in order to work on a project which fell under the responsibility of another younger White team member, Leonard Erlanger, Plaintiff, acting as a sold team member, completed the work necessary for the project. Thus, Defendants reasons for Plaintiff's are pretextual.

40.     Despite Defendant TALLMAN's claims, Plaintiff was an excellent team member. Plaintiff worked with the Channel Managers individually and collectively for three days in order to ensure the team's success. This was done despite the fact that the members reported to Leonard Erlanger, not Ms. Foss. Mr. Erlanger's participation and leadership was minimal. On April 6, 2005, Mr. Erlanger left at 4:30 p.m., while Plaintiff remained until 6:30 p.m., after all the work was checked and completed. Furthermore, since the arrival of Mr. Erlanger, Plaintiff performed many of his duties (i.e., pricing, business plans, training).

41.     Upon information and belief, Defendants have personnel policies and practices and procedures in place that provide for a variety of disciplinary actions to be taken prior to the termination of an employee. The Defendants did not follow any of these personnel policies, practices or procedures prior to their termination of the Plaintiff.

42.     Upon information and belief, Defendant COCA-COLA utilizes a disciplinary process known as "Progressive Discipline" for all associates. This documented process is designed to correct behavior and/or performance. It consists of the following four (4) steps:

•       Verbal warning: given to the associate about an incident or performance that requires

9

        corrective action
- First Written Warning: given if there is a repeat of the first offense, usually same behavioral or performance issue
- Final Written Warning: at this point, the associate is made aware of the severity of the situation, and a lack of improvement may lead to termination
- Move to Termination

So as to avoid any confusion, or misunderstanding, the associate is provided documents of each of the above warning.

43.      Prior to Plaintiff's termination, she was unaware of any performance deficiencies which would support or justify her termination particularly since Plaintiff never received any warnings either orally or in writing.

44.      Defendant WYNNE chaired and founded the "Talent Development Committee." Upon information and belief, within the rating system for associates, Defendants COCA-COLA a "color coding system" is associates with the ratings: Green represents High Potential/Ready Now; Blue represents Developing Talent/Ready 6+ months; Yellow represents Consistent Performer; Red represents employee failing to perform at acceptable level/must address immediate. Upon information and belief, the Manager is required to discuss with an employee his/her rating and share relevant feedback and information.

45.      Upon information and belief, an associate who has received a rating as an under performer, or has the color "red" placed in his/her box is placed on a Performance/Progressive Discipline Plan. This plan is to correct behavior and performance at an accelerated rate, and is usually a 30, 60 or 90 day plan. Upon information and belief, a Manager, Human Resources, and possibly the Manager's superior, agree to the duration of the plan. The purpose is to make the employee aware of his/her performance and the severity of the situation. This is a shared responsibility between the Manager and associate.

10

46.     PIP is part of the progressive discipline employed by Defendant COCA COLA.  COCA COLA has maintained that Plaintiff FOSS was "not qualified" for her position.

47.     However, Plaintiff was never, at any time, placed on a PIP.  Defendant WYNNE failed to follow the Talent Development Committee procedures as outlined by him.

48.     Additionally, during the meeting on May 4, 2005 where Plaintiff was wrongfully terminated, Defendant TALLMAN sought the guidance of his superior, Defendant WYNNE.  It was at that time that the decision was made to terminate the Plaintiff.  Clearly, Defendant WYNNE was a direct participant in the discriminatory actions taken against Plaintiff FOSS.

49.     Upon information and belief, the following white males were placed on PIPs prior to their termination: Jim Coviello, John Bruschi, Kevin Duane, Tim Roach, Glen Noonan, Mike Marcojohn, Dan Schirmamano and Brian Shook.  Plaintiff was never afforded the same opportunity by Defendant WYNNE as the aforementioned white males.

50.     Upon information and belief, Brian Shook, a White, male, was placed on a Performance/Progressive Discipline Plan prior to being terminated.  Mr. Shook worked for Defendant COCA-COLA in the same location as the Plaintiff.  He worked for Defendant COCA COLA for approximately nine (9) years and was terminated in April 2005. Defendants' policy of corrective discipline, when an employee has performance problems, was applied to Mr. Shook.  Mr. Shook was put on a Performance/Progressive Discipline Plan for 60 days before he was terminated, and the plan and the meetings were put in writing.

51.     Upon information and belief, Mr. Shook's supervisor was Janice McCarthy, and he also worked under the direction of Lenny Erlanger.  Upon information and belief,  his performance plan was discussed with Mr. Walshe and Ms. McCarthy.

52.     Defendant VAN AKEN clearly knew the use of PIP.  On May 26, 2004 Defendant VAN

11

AKEN forwarded a Performance Improvement Plan template to an employee. He specifically stated, "I will review your performance in approximately 30, 60 and 90 days or sooner as needed. I will be sending you meeting notices for Feb1, March 1 and April 1." Defendant VAN AKEN did not provide Plaintiff FOSS any of same information or opportunities prior to her discharge.

53.      Defendant CUSHMAN, Vice President of Human Resources, had prior knowledge of the discriminatory actions taken against Plaintiff, failed to recommend any of the Progressive Discipline procedures and approved the decision to terminate Plaintiff FOSS. Defendant CUSHMAN knowingly participated in the discriminatory actions against Plaintiff despite her awareness of the progressive discipline procedures utilized for all other white employees at Coca Cola.

54.      Plaintiff was treated differently from other employees because she had not received any warnings prior to her termination. It is Defendant COCA COLA's policy to place employees on a Performance Improvement Plan for a probationary period prior to termination. Although there was no problem with Plaintiff's work, Plaintiff was not afforded the opportunity to improve her alleged performance issues – if it were indeed necessary as alleged by Defendant TALLMAN.

55.      At no time, prior to her termination did Defendants discuss performance problems with Plaintiff, apply their policy of corrective action, or provide Plaintiff FOSS with written notice of performance problems. Instead, Defendants arbitrarily, summarily, and without justification terminated Plaintiff.

56.      Defendant TALLMAN, as the Director of the Cold Drinks Division, and Defendant GARRETT, as a Human Resources Manager, never met with Plaintiff regarding any concerns regarding her performance. Plaintiff FOSS was arbitrarily terminated without being afforded any time to correct any alleged behavioral deficiencies, which was a benefit afforded to other white employees.

57.      Upon information and belief, prior to their termination, fellow employees (white males)

12

received warnings, and had the opportunity to improve, while Plaintiff (an African American female) did not receive the same opportunity, proving discriminatory actions against her.

58.     Upon information and belief, Defendant COCA-COLA employs a rating system for associates, which is presented to the Talent Development Committee, which consists of the Executive Team Members. This is the main influencing criteria used for promotions and assignments within the organization.

59.     An associate's rating is based on performance on the previous period, and is conducted three (3) times annually. One of these reviews coincides with the Annual Employee Appraisals (in or about March/April). The company stresses the importance of communicating an associate's standing.

60.     During her entire period of employment with Defendant  COCA-COLA, Plaintiff's employee evaluations showed that Plaintiff consistently performed within and above expectations.

61.     During her entire period of employment with Defendant COCA-COLA, Plaintiff received "meets expectations/goals", "exceeds expectations/goals", "on target", or "exceeds target" on each of her annual employment evaluations. At no time during her employment with Defendant COCA-COLA has Plaintiff ever been placed on a Performance/Progressive Discipline Plan, nor has any evaluation had a "red" color code placed thereon.

62.     As Grade 102 Managers, both Plaintiff and Janice McCarthy were equal in rank, yet Ms. McCarthy was given an executive level car while the Plaintiff was not.

63.     Upon information and belief, Defendant COCA-COLA implemented a Management Acceleration Program (hereinafter "MAP") which is a training program focused on the cross training and development of associates. This program had criteria narrowly established to prepare candidates to become Sales Center Managers. Two critical elements for applying for this program were that the candidate desired to become a Sales Center Manager, and were willing to re-locate.

13

64.    At an unknown time, the criteria and decision-making was changed, as was the application process. The candidate no longer had to be interested in becoming a Sales Center Manager, nor did they have to re-locate. Now, the Executive Team nominated candidates, and the criteria for selection as well as nomination have never been communicated.

65.    On a number of occasions Plaintiff expressed to the Defendants her interest in being promoted. In fact, Plaintiff sought to be placed in MAP only to learn that the application process for this program was changed. Prior to this time, Plaintiff was never informed of the program's changes.

66.    Upon information and belief, Janice McCarthy was nominated for, and placed in the program by the Defendants. Plaintiff questioned her supervisor, Mr. Walshe, regarding this nomination in an around March or April of 2003, but was never given a proper response.

67.    Ms. McCarthy was placed in the MAP program despite, on information and belief, her lackluster performance as Cold Drink Market Development Manager.

68.    Thereafter, the next candidates to be nominated were Megan Tallman, a white female, and the wife of Plaintiff's supervisor Defendant TALLMAN; and Tom Sagliano, a white male. Upon information and belief, Tom Sagliano has allegedly had numerous complaints lodged against him by fellow Bronx Sales Center employees throughout the years. Upon information and belief, Mr. Sagliano also reported to Defendant TALLMAN through December 2004.

69.    Upon information and belief, Plaintiff was not nominated to the MAP program, despite her stellar performance during her tenure at Defendant COCA-COLA. Plaintiff was not nominated due to her race/color.

70.    In or about January of 2004 when both Plaintiff and Ms. McCarthy were assigned special projects, Ms. McCarthy was given full support by management as well as administrative staff, in order to successfully complete her project while Plaintiff was not.

71.     In addition, Ms. McCarthy was allowed to attend executive staff meetings while Plaintiff was not.  Furthermore, with respect to Plaintiff's peer staff meetings of which she was a team member, Ms. McCarthy was allowed to attend, or not, at her leisure.

72.     Upon information and belief, Defendant TALLMAN has permitted Ms. McCarthy to openly and freely criticize Plaintiff's work, and supported Ms. McCarthy's initiatives,  while rebuking Plaintiff's attempts to constructively critique Ms. McCarthy's performance.

73.     Upon information and belief, Ms. McCarthy has a reputation at the Defendant COCA-COLA for not hiring African American employees for areas she directly supervises.

74.     Upon information and belief, Ms. McCarthy has been the subject of complaints based upon discrimination.

75.     Upon information and belief, Ms. McCarthy has a reputation of treating African American employees she supervises differently based upon their race and/or color and their gender yet is nevertheless advanced in her career by the Defendants.

76.     Upon information and belief, Defendant TALLMAN is disrespectful towards minorities employed by Defendant COCA COLA.  Upon information and belief, Defendants WYNNE, CUSHMAN, GARRETT and VAN AKEN were aware of, condoned, supported, validated and encouraged  Defendant TALLMAN's behavior.

77.     Upon information and belief, during Plaintiff FOSS's many years of employment, Defendant COCA-COLA received no complaints about Plaintiff's performance until she began working under the supervision of Defendant TALLMAN.  Upon information and belief, Defendants WYNNE, CUSHMAN, GARRETT and VAN AKEN were aware of, condoned, supported, validated and encouraged  Defendant TALLMAN's behavior.

78.     Upon information and belief, Defendant TALLMAN failed to promote several minority employees, although they were qualified for said promotion.  Upon information and belief, Defendants WYNNE, CUSHMAN, GARRETT and VAN AKEN were aware of, condoned, supported, validated and

encouraged Defendant TALLMAN's behavior.

79.     The foregoing consistent harassment and Plaintiff's wrongful termination has caused Plaintiff to suffer emotionally, economically, and physically. Plaintiff's supervisors did nothing to stop this discriminatory treatment.

80.     Plaintiff was injured in her person, mental health, concept of self worth, business property, professional future and otherwise, by reason of these overt violative actions set out above in that, as a direct and proximate result of all the wrongful acts of Defendants, Plaintiff has had her rights both, constitutionally and statutorily violated; has lost benefits, has lost career status and advancement; has been subjected to humiliation, abuse, embarrassment and extreme physical and mental harm; and other injuries not yet fully ascertained.

81.     Defendants collectively and individually and through their agents, servants and employees intentionally deprived Plaintiff of her constitutionally protected rights and did so because and on account of Plaintiff's age, race and color and gender an in retaliation for having complained about the discriminatory conduct to which she was subjected.

## AS AND FOR A FIRST COUNT
### TITLE VII, CIVIL RIGHTS ACT of 1964, 42 U.S.C. § 2000e

82.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 81 inclusive of this Third Amended Complaint, with the same force and effect as though herein fully set forth herein.

83.     The Defendant COCA COLA, through its agents and employees, discriminated against the Plaintiff in her employment including terminating her based on Plaintiff's race, color, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended.

84.     As a direct result of said acts, Plaintiff JANICE FOSS has suffered and continues to suffer loss of income, loss of other employment benefits and has suffered and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to her reputation.

85.     As a result of the Defendant's discriminatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR A SECOND COUNT
### 42 U.S.C. § 1981

86.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 85 inclusive of this Third Amended Complaint, with the same force and effect as though herein fully set forth.

87.     The above discriminatory pattern and practice based on race and color by Defendants COCA COLA, TALLMAN, WYNNE, CUSHMAN, VAN AKEN, and GARRETT, (in their individual and official capacities),  through their agents and employees violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No, 102-406).

88.     As a direct and proximate result of said acts, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, embarrassment, and damage to her reputation.

89.     Because of Plaintiff's color she has been subjected to abuse and mistreatment as detailed above and has been treated differently than white individuals.

90.     As a result of the Defendants' discriminatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## AS AND FOR A THIRD COUNT
## AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967
### 29 U.S.C. § 621 *et seq.* (as Amended)

91.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 99

inclusive of this Third Amended Complaint, with the same force and effect as though herein fully set forth herein.

92.     At the time of her termination, Plaintiff was 44 years old.

93.     Upon information and belief, Defendant  COCA COLA through their agents and employees, retained a  white individual, who was substantially younger than Plaintiff after the Defendant's wrongfully terminated the Plaintiff.

94.     Upon information and belief, this young white employee did not possess skills or experience as great as those possessed by the Plaintiff.

95.     Defendant's treatment of Plaintiff was undeserved, unduly harsh and unfair when compared to the treatment given the other employees whose job skills and performance levels are inferior to the Plaintiff's.

96.     Defendant's actions and treatment of Plaintiff was wrongful, abusive and unconscionable and was based in part or whole upon Plaintiff's age.

97.     Plaintiff has been irreparably injured by said abusive treatment and has, by this cloud, been prevented for an unreasonable period from obtaining gainful employment in her field, has lost wages, lost medical insurance, lost life insurance, suffers severe emotional distress, has lost job security and has incurred other injuries.

98.     Defendant violated public policy in discriminating against Plaintiff JANICE FOSS because of her age.

99.     Plaintiff has been irreparably denied the rights secured by the Age Discrimination in Employment Act.

100.     As a result of the Defendant's discriminatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of five  million ($5,000,000.00) dollars, as well as punitive damages, costs and attorneys fees.

## AS AND FOR A FOURTH COUNT
## NEW YORK STATE EXECUTIVE LAW § 296 (Human Rights Law)

101.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 109 inclusive of this Third Amended Complaint, with the same force and effect as though fully set forth herein.

102.    Defendants COCA COLA, TALLMAN, WYNNE, CUSHMAN, VAN AKEN, and GARRETT, as aiders and abettors, through their agents and employees wrongfully discriminated, on the basis of race, color and age against Plaintiff in the terms, conditions, privileges, and compensation of her employment, and in wrongfully terminating him from him employment, all in violation of New York's Executive Law § 296.

103.    Defendants, COCA COLA, TALLMAN, WYNNE, CUSHMAN, VAN AKEN and GARRETT, knew of the discriminatory action taken by Defendant TALLMAN against the Plaintiff because they had specific knowledge of TALLMAN's intention to terminate of Plaintiff; knowledge that Plaintiff met all goals and requirements necessary for her position as an Area Cold Drinks Manager, and that any reason given by TALLMAN for Plaintiff's termination, without affording Plaintiff a hearing or investigation, were pretextual.

104.    Upon information and belief, Defendant TALLMAN, who is a Director, a high ranking officer of Defendant COCA-COLA, was aware that the actions taken against the Plaintiff were illegal and discriminatory.

105.    Upon information and belief, Defendants WYNNE, CUSHMAN, VAN AKEN, and GARRETT, had knowledge of Defendant TALLMAN's illegal and discriminatory actions, knowledge that these actions would be taken against the Plaintiff, took no actions to prevent such conduct, and thereby condoned such adverse acts taken against the Plaintiff.

106.    Based on the aforementioned facts, Defendants WYNNE, CUSHMAN, VAN AKEN and GARRETT engaged, supported and encouraged illegal and discriminatory actions against Plaintiff.

107.    As a result of the Defendants' discriminatory acts, Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages, as well as damages for mental anguish and humiliation, and that Plaintiff is entitled to damages sustained to date and continuing in excess of the amount of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

Plaintiff requests judgment as follows:

a.    First Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b.    Second Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.    Third Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

e.    Fourth Cause of Action: in excess of five million ($5,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

f.    Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

g.    A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

h.    Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to allow the Plaintiff to continue in the position from which Defendants' illegally terminated her; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

i.    An Order granting such other legal and equitable relief as the court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Dated: Hempstead, New York
          March 6, 2008

LAW OFFICES OF
FREDERICK K. BREWINGTON

By:

FREDERICK K. BREWINGTON (FB5295)
*Attorneys for Plaintiff*
50 Clinton Street, Suite 501
Hempstead, New York  11550
(516) 489-6959

DOCKET NO.: CV-07-1322 (JS)(WDW)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------- X

JANICE FOSS,

Plaintiff

-against-

COCA COLA ENTERPRISES INC., Defendant GENE
TALLMAN, in his individual and official capacity, BRIAN
WYNNE, in his individual and official capacity, SEENA
CUSHMANN, in her individual and official capacity,
MICHAEL VAN AKEN, in his individual and official capacity
and SUSAN GARRETT in her individual and official capacity,

Defendants.

-------------------------------------------- X

THIRD AMENDED
COMPLAINT

-------------------------------------------- X

LAW OFFICES OF
FREDERICK K. BREWINGTON
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959